213 So.2d 883 (1968)
C.T. HEATH and Wife, Edith M. Heath, Appellants,
v.
FIRST NATIONAL BANK IN MILTON, Milton, Florida, a Florida Corporation, Appellee.
No. J-220.
District Court of Appeal of Florida. First District.
September 12, 1968.
*884 Holsberry, Emmanuel, Sheppard & Mitchell, Pensacola, for appellants.
T. Sol Johnson, of Johnson & Johnson, Milton, for appellee.
JOHNSON, Judge.
This is an appeal from a final decree of foreclosure of a real estate mortgage against the homestead of the appellants herein.
From the disputed facts, the trial court found and so adjudicated, that the mortgage being foreclosed was knowingly executed by "C.T. Heath and wife, Edith M. Heath, in the presence of two witnesses," and constituted a valid lien upon the premises therein described for the repayment of sums theretofore and thereafter loaned to said mortgagors, or either of them, up to a total of $17,000.00. Attorneys fees and costs were also allowed. We do not find the evidence sustains the finding that the Heaths knowingly executed the $17,000.00 mortgage.
As we see the facts, there are to us the following important factors to be considered and which have a material bearing on this case: (1) H & H Roofing Company was recognized by the appellee Bank as a business entity to the extent that said Bank carried a loan account in the name of H & H Roofing Company and on many occasions made loans to C.T. Heath, doing business as H & H Roofing Company, and sometimes had the instruments of indebtedness executed "H & H Roofing Company by C.T. Heath"; (2) C.T. Heath had formerly had a partner by the name of Harper, which accounts for the H & H in the company name, but that C.T. Heath had for years operated his roofing business under said fictitious name; that Mrs. Heath had no interest in nor had she participated *885 in any way in said roofing business; (3) At the same Bank, the appellants C.T. Heath and Edith M. Heath had a joint loan account, separate and apart from that of the Roofing Company; (4) The mortgage being foreclosed is set out in full as follows:
 "STATE OF FLORIDA
 "SANTA ROSA COUNTY MORTGAGE DEED
"Know All Men By These Presents: That H & H Roofing Company, By, C.T. Heath, Route 3, Milton, Florida, residing in _____ for and in consideration of My indebtedness to FIRST NATIONAL BANK IN MILTON, Milton, Florida, in the sum of Nine Hundred Twenty Four & 05/100 Dollars ($924.05) which is evidenced by One promissory note ____ bearing even date with this instrument and made payable to said FIRST NATIONAL BANK IN MILTON as follows, to-wit:
"One Promissory note of even date in the amount of $924.05, payable in full on 8-17-59.
"and for the purpose of securing the payment of said note an attorney's fees and all charges and expenses agreed to be paid therein, and all renewals of the same, whether made before, at or after the maturity thereof, as well as all other, further and future advances made or caused to be made to One, or either of us, by the FIRST NATIONAL BANK IN MILTON, and all other sums and amounts which We may now or hereafter be indebted to the said FIRST NATIONAL BANK IN MILTON, its successors and assigns, do grant, bargain, sell and convey unto the said FIRST NATIONAL BANK IN MILTON all of the crops of every kind and description grown by or for the undersigned, or either of them, during the year 19__, and each year thereafter until the amounts secured hereby are fully paid; also, all farm implements of every kind and nature owned by One, or either of us; also, the hereinafter described property situated in the County of Santa Rosa and the State of Florida, to-wit:
"The East Half of the Southwest Quarter (E 1/2 of SW 1/4) of Section 8, Township 2 North, Range 28 West, containing eighty acres, more or less.
"And also, to secure the payment of any and all notes, liabilities and obligations of the mortgagors, or either of them, to the mortgagee, its successors or assigns, whether as maker, endorser, guarantor or otherwise, and whether such notes, liabilities or obligations, or any of them be now in existence or accrue or arise hereafter, or be now owned or held by the mortgagee, or be acquired hereafter, it being the intent and purpose of the mortgagors to secure, by this mortgage, all notes, claims, demands, liabilities and obligations which the mortgagee, its successors or assigns, may have, hold, or acquire at any time during the life of this mortgage against the mortgagors, or either of them, Provided, that the total of all amounts secured hereby shall not exceed at any one time the sum of Seventeen Thousand & No/100 ($17,000.00) Dollars, in the aggregate; and provided further that all such notes, claims, demands or liabilities and obligations secured hereby be incurred or arise or come into existence either on or prior to the date of this mortgage, or on or before FIVE YEARS.
"Also, all other personal property owned by One or either of us, including all household furniture and fixtures of every kind and nature, it is the intention of the parties to this instrument that the specific description *886 of the property set forth above does not affect or impair the general description, `all other personal property owned.'
"The Foregoing Conveyance is intended to be, and is, a mortgage, to secure the payment of One promissory note ____ as described in the first paragraph of this instrument, and all future advances during the life of this mortgage, made by the said FIRST NATIONAL BANK IN MILTON, the said mortgagee, or its successors and assigns, to One or either of us, said note bears interest from Beginning until paid at the rate of 8 per annum, the said interest payable In Advance at FIRST NATIONAL BANK IN MILTON.
"The mortgagor covenants that ____ he will keep perfect and unimpaired the security hereby given, that ____ he will keep the improvements upon said mortgaged property insured for a sum not less than Five Thousand & no/100 Dollars, in an insurance company to be approved by the mortgagee, loss, if any, payable to the mortgagee as its interest may appear, until such note ____ be fully paid; that ____ he will pay all taxes, assessments and charges, which may or might become liens superior to that hereby created, and if such insurance be not procured or maintained, or such taxes, assessments and charges be not paid the mortgagee may procure and maintain such insurance, and pay such taxes, assessment and charges and the lien herein created shall extend to all such sums expended, with interest at the rate of ten per cent per annum.
 (No. 20208 Filed 7-30-59 at 11:25 O'Clock A.M., Recorded
 in the public records of Santa Rosa County, Florida, ...)
"The mortgagor ____ agrees ____ that the indebtedness, covered by this mortgage shall become immediately due and payable, and this mortgage shall become immediately foreclosable, for all sums secured hereby, if the said indebtedness, or part thereof or the said interest or any installments thereof, shall not be paid according to the terms of the said note ____ or if the mortgagor ____ shall omit the doing of anything herein required to be done for the protection of the mortgagee; and all costs and expenses including attorney's fees and commissions incurred in collecting this mortgage debt, shall be a part of the mortgage debt and a lien upon the mortgaged property, and if a foreclosure of this mortgage be had, or a suit to foreclose the same be rightfully begun he ____ will pay all costs and expenses of said suit, including an attorney's fee to the attorney of the complainant foreclosing, of not less than $15 and ten per cent, upon the amount decreed to the complainant, which costs and fees shall be included in the lien of this mortgage and in the sum decreed upon foreclosure.
"IN WITNESS WHEREOF I have hereto set My hand and seal this 17 day of July, 1959.
 Signed, Sealed and delivered H & H ROOFING COMPANY
 in the presence of: /s/ By: C.T. Heath (SEAL)
 /s/ Mrs. Edith M. Heath (SEAL)
 /s/ Barbara J. Black
 /s/ Ima C. McCombs
 "STATE OF FLORIDA
 "SANTA ROSA COUNTY
"Before the subscriber personally appeared C.T. HEATH and ______ known to me to be the individual described in and who executed the *887 foregoing instrument, and acknowledged that he executed the foregoing instrument, and acknowledged that he executed the same for the uses and purposes herein set forth.
"And the said ______ wife of the said ______ on a private examination, by me held separate and apart from her husband, acknowledged and desclared that she executed the same freely and voluntarily and without fear, apprehension, compulsion or constraint of or from her husband, and for the purpose of renouncing, relinquishing and conveying all her rights of whatsoever kind in and to said property.
 Given under my hand and official
 seal this 17 day of July, 1959.
 ($.90 State Revenue is /s/ Ima C. McCombs 
 attached to note.) N.P. State of Florida at large
 My Commission expires 5-22-62"
From a reading of said mortgage it is apparent on its face that it purports to be the mortgage of H & H Roofing Company, and is so stated in the body of the mortgage as well as in the signature of H & H Roofing Company "By C.T. Heath." The name of Edith M. Heath does not appear anywhere in the instrument except there is a signature as "Mrs. Edith M. Heath." She does not appear in the acknowledgment, either.
(5) The signature by Mrs. Heath is denied by her, although she says it looks like her signature, and she denies that it was signed in the presence of two witnesses. She says further, however, that if she did sign said mortgage she did not know or have explained to her that she was encumbering her homestead for the $17,000.00, including operating debts of H & H Roofing Company.
We further find from the evidence that Mr. Heath said that when he signed the note and mortgage, there was no one present to witness his signature except "Mr. Carver" the Bank Officer handling the deal, and he did not sign as a witness. He said any one in the front of the bank building, although in the same room, could not have seen him sign the instruments. Mrs. Heath, who did not sign at the same time as Mr. Heath says that when she signed the "note" and, if she signed the mortgage, when she did so, no one saw her sign except Mr. Carver and no one came over to Mr. Carver's desk where the papers were signed, to witness her signing the same.
In opposition to this direct denial that said instrument was not executed in the presence of two subscribing witnesses as required by law, the Appellee Bank offered only the one witness, Ima C. McCombs, who testified that she did not recall anything about the execution of the instrument in question, whether the Heaths came in together or not, nor exactly where Mr. Carver's desk was located, but concluded her testimony with the statement "I know I witnessed it if my name is on there." There was no testimony of any kind offered as to the other witness, Miss Black, signing in the presence of or seeing Mr. and Mrs. Heath sign the mortgage, other than the instrument itself, and when there is direct testimony to refute a material fact, namely, that said instrument was "signed in the presence of two subscribing witnesses," the presumption shown by the written instrument is overcome.
This being Homestead property as well as an estate by the entirety, we think, and so hold, that the mere signature to an instrument which appears on its face to have been intended for something else, *888 when coupled with the facts that Mrs. Heath had refused to become involved in the business affairs of H & H Roofing Company except as to the one note of $900.00, renders the mortgage void as being in violation of Article 10, Sections 1 and 4, Florida Constitution, F.S.A., Article 10, Section 1 of the Constitution says that the homestead may be alienated only by the "joint consent" of the husband and wife, and Section 4 of said Article authorizes the alienation by deed or mortgage duly executed by said husband and wife.
This provision calling for consent, we feel cannot be met by the implied consent adduced by her signature alone. The constitutional and statutory provisions concerning homesteads should be interpreted in the liberal and beneficent spirit in which they were conceived and construed liberally in the interest of the family and in favor of the persons entitled to them.[1]
The amendment of Section 693.03, Florida Statutes, F.S.A. by Chapter 21746, Laws of Florida, 1943 dispensed with the acknowledgment by a married woman as necessary to the "due execution" by her of deeds, but did not dispense with the requirement of two subscribing witnesses.[2]
While an appellate court will not disturb the findings of fact by the trier of facts, if there appears to be sufficient competent evidence to support such findings; but, if the weight and competency, both, of the evidence is clearly contrary to the findings of fact as determined by the trial court, then it is not only the authority, but also the duty of the appellate court to so find and reverse the trial court.
We have in this case an instrument prepared by the complaining party in such a manner and in terms different from what the said complaining party now claims was intended. Any errors or ambiguities in the language of the instrument must be construed more strongly against the drafter of such instrument.
Further, the complaining party failed completely to contradict by competent evidence, the claim of the defendants that the instrument was not signed in the presence of two subscribing witnesses, as required by law for the same to be valid as to a homestead.
The intent of the parties to an instrument is of prime importance and it is generally presumed that the parties intended to do that to which they subscribed their names, but under circumstances such as appears in this case, the conduct of the parties, and particularly of the appellant, Mrs. Heath, was such as to render at least questionable just what was the intent of the parties. The appellee, plaintiff below, made no attempt to dispel or clarify this questioned intent by the use of any evidence or witness having knowledge of the facts surrounding the drafting and execution of the mortgage in question.
The constitutional requirement for alienation of a homestead must be strictly construed in favor of the homestead claimant. "Joint consent" and "due execution" of and by both spouses cannot be presumed but must be determined from unrefutable evidence.[3]
Further, the decisions relative to the necessity for the grantor to be named or identified in the body of the instrument to render it valid, are about equally divided, with reputable courts holding each way. We do not find a Florida decision directly in point, but because of all the attending circumstances surrounding the execution of *889 the mortgage in question and the intention of the parties, we have elected to and do follow in this case the line of decisions which hold that the signature alone, without the signor being elsewhere named in the instrument, is insufficient to render the deed or mortgage valid.
For the reasons stated herein, the final decree of foreclosure appealed from is hereby reversed and the lien of the mortgage attempted to be foreclosed herein is hereby declared null and void and of no effect against the homestead property of the appellants described therein.
Reversed.
RAWLS, Acting C.J., and SPECTOR, J., concur.
NOTES
[1] Marsh v. Hartley, 109 So.2d 34 (Fla. App.2d 1959); Vandiver v. Vincent, 139 So.2d 704 (Fla.App.2d, 1962).
[2] Abercrombie v. Eidschun, 66 So.2d 875 (Fla. 1953).
[3] Scott v. Hotel Martinique, Inc., 48 So.2d 160 (Fla. 1950).